## GRIEVES v. MICKELS.

No. 22682.    March 26, 1935.

W. C. Austin, P. A. Sompayrac, and Warren T. Spies, for plaintiff in error.

J. M. Humphreys, for defendant in error.

PHELPS, J. The parties will be called plaintiff and defendant, as in the trial court. Chronologically, the considerations governing this decision are as follows:

(a) On February 27, 1925, there was enacted by Congress, as an exercise by the federal government of its national guardianship over the Osage Indians, an act pronouncing void any contract for debt thereafter entered into with any member of said tribe not having a certificate of competency, unless approved by the Secretary of the Interior. Section 6 thereof (43 Stat. 1011) is:

"No contract for debt hereafter made with a member of the Osage Tribe of Indians, not having a certificate of competency, shall have any validity, unless approved by the Secretary of the Interior."

(b) On October 7, 1927, the defendant Clarence D. Mickels and the defendant Ola E. Mickels (then husband and wife, but divorced prior to the trial of this case) executed their joint and several note and mortgage to plaintiff. The mortgage covered unrestricted land in Osage county which the defendant Clarence Mickels acquired mostly through his allotment, but some of it through purchase. He was a member of the Osage Tribe and did not have a certificate of competency. The signing of the note and mortgage were not approved by the Secretary of the Interior. The wife was a white woman and contracts with her were not affected by the above act of Congress.

(c) On April 3, 1930, the note and mortgage being due and unpaid, plaintiff filed her petition in the district court, seeking, against both defendants, judgment on the note and foreclosure of the mortgage. The ex-wife failed to defend; Clarence Mickels filed answer denying liability by reason of the above act of Congress. In September, 1930, the note was presented to the Secretary of Interior for his approval, and said approval was denied. Thereafter the issues were tried, resulting in the judgment of the trial court that the note was void as to the defendant Clarence Mickels, that the mortgage was wholly void, and rendering personal judgment on the note against the defendant Ola Mickels. The plaintiff perfected appeal to this court, admitting that the note is void as to the Indian, but contending that as to him the mortgage is valid and is not a "contract for debt" within the meaning of the above act.

There is a distinction between "contract for debt" and "debt." The former often creates the latter, as in this case. As said in plaintiff's brief, quoting from 17 C. J. 1376:

"While a debt has been loosely defined as a contract or promise, it is not a contract, but is the result of a contract."

Giving the words their plain and obvious meaning, a "contract for debt" is simply a contract having for its purpose, or one of its purposes, the creation of a debt.

The plaintiff takes the attitude that the note was a "contract for debt," but that the mortgage was not; she says that the mortgage was a conditional conveyance, separate and apart from the debt created, and having relation thereto only as security for the payment of the debt. But without performance of the condition, it could not be a conveyance. The condition was the nonpayment of the debt, which was created by the "contract for debt." But what was the "contract for debt"? The contract was that agreement which was produced by the meeting of the minds of the parties, the whole transaction, as evidenced by both instruments. This is elementary. The petition itself, after reciting the note, alleged that "at the same time and place and as a part and parcel of the same transaction and as a part and parcel of the same contract, and for the purpose of securing payment of said promissory note * * * the said defendants * * * made, executed and delivered to Paulina A. Grieves their certain mortgage."

In plaintiff's brief it is said:

"It is, of course, true that both the note and the mortgage are usually part and parcel of the same transaction. * * * But that circumstance does not merge the identity of the items so considered together."

It is not the items themselves, but their inception, with which we are here concerned: the transaction creating the debt, the "contract for debt." The Secretary of the Interior nor his approval was present at their inception, and he later declined to approve the transaction.

The plaintiff probably would not have accepted the note without its accompanying mortgage; they are two stalks from the same

root. It is the root at which we must look, for the effect of the statute is to declare the contract void from the moment of its illegal execution. Thus it is apparent that, though for some purposes the two instruments may be considered separately, they cannot be when the test that must be applied is not to the instrument themselves, but to the one contract from which they both derived their origin.

Further, the mortgage in its own provisions (usual form) refers to the note, makes the same an integral part thereof, and contains at least the implied promise of the defendant to pay the debt. It is as much a part of the "contract for debt" as is the note. Neither, alone, constitutes the entire contract; both do. A mortgage is one of the forms of debt by contract, sometimes called a debt by specialty, which is defined in Blackstone's Commentaries, vol. 2, p. 465, as "a debt or contract whereby a sum of money becomes, or is acknowledged to be, due by deed or by an instrument under seal." Ballentine's Law Dictionary, 334. The mortgage, which was itself contemplated in and created by the contract for debt, merely provides a means of enforcing the debt, which was likewise created by the contract for debt.

Plaintiff further urges that it must be kept in mind that there is a distinction between the debt itself and the securities for it, and that the terms "debt" and "security" are not synonymous. That is true. But neither debt nor security is the key point here; the key point is the contract, which created both the debt and the security.

That contract, being void ab initio, because of its direct violation of a statute, is indivisible in this case. We cannot say, nor is it to be presumed, that the parties would have agreed to the mortgage regardless of the validity of the note, nor to the note regardless of the validity of the mortgage. The note is void, not because it is in violation of the statute (for it is only evidence of the debt and of the contract), but because the contract is void from which it sprang. The mortgage is void for the same reason. It is unnecessary to differentiate this case from those in which the mortgagee may waive either the note or the mortgage and sue on the other; the distinction is plain.

In their excellent brief, counsel for plaintiff next liken this transaction to those cases wherein a married woman, though at that time incapable of contracting, mortgaged her separate property in support of her husband's note, and the mortgage was held binding on her as in Bartlett v. Bartlett (Mass.) 4 Allen, 440, though the note was not binding. The married woman in that case, as the Indian in this, was unrestricted as to alienation of her land. Counsel say that the note of Mrs. Mickels is here sufficient to support the mortgage and make it binding on Clarence Mickels, and that the mortgage should not here "fall of its own weight" as did the mortgage of defendant in Dial v. Kirkpatrick, 168 Okla. 21, 31 P. (2d) 591, where there was no comaker or comortgagor. We make no attempt to either harmonize or differ with the Bartlett Case; it is plain that the mortgage here was a vital part of the "contract for debt," wh'ch was declared invalid by act of Congress, which act has by this court been declared constitutional. Pasley v. Union National. Bank, 137 Okla. 171, 278 P. 621.

We here reiterate our expression in Dial v. Kirkpatrick, supra:

"Section 6 of the act above quoted is clear and explicit. It simply provides that no contract for debt made by an Osage Indian is valid unless approved by the Secretary of the Interior. It was within the power of Congress to pass such an act for the protection of the Osages. The object was to protect the Indians from becoming the prey of designing persons. The contract was unenforceable when made, and in the absence of the approval of the Secretary of the Interior the court was without power to breathe vitality into an instrument unenforceable as a contract by reason of the acts of Congress."

We therefore hold that the contract was void ab initio and in its entirety as against the defendant Clarence Mickels and that said note and mortgage are invalid and unenforceable against said defendant. The trial court was correct in its judgment, and it is hereby affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS and CORN, JJ., concur.